Case number 23-5748, Michael Salazar v. Paramount Global, oral argument not to exceed 15 minutes per side. Joshua Hammack for the appellant, you may proceed. Good afternoon, your honors, and may it please the court. I'm Joshua Hammack on behalf of Mr. Salazar. I'd like to reserve three minutes for rebuttal. We're here today to talk about a one videotaped service provider from disclosing something called personally identifiable information about someone called a consumer. It requires all three separately defined elements, VTSP, consumer, and PII. And as we move through those terms, I want you to think about three things, blockbuster video, a Butterfinger candy bar, and back to the future. Let's start with videotaped service provider. The statute defines it as any person, quote, engaged in the business of rental, sale, or delivery of pre-recorded videocassette tapes or similar audiovisual materials, unquote. Imagine taking a DeLorean back to 1988, the year the VPPA was enacted, and landing at a blockbuster. Can I ask you a question about 1988? And I'm curious, let me give you a couple of things, and I'm curious whether they would have been covered in 1988. One are movie theaters who are delivering movies, but not tangible movies, I suppose. And the other one are public libraries. If I recall in 1988, I could go down to my library and check out a and movie theaters were covered in 1988. I think movie theaters is probably the easier answer, yes, because they're delivering similar audiovisual materials. So I think that one's, and they're selling them, renting them, however you want to describe what they're doing. So I think that one's an easier yes. The library is a little bit more difficult because- Let me stop you there. So if a movie theater had somehow kept track of personal information by its patrons, it would have been covered by the statute. Is there any indication that that ever came up, a movie theater? I am not aware of a case involving a movie theater that kept track of its patrons and disclosed personally identifiable information. I'm not aware of that happening. Okay, and then libraries? I think the trickier piece there is engaged in the business of rental, sale, or So is a library engaged in the business? Think about a public library and how it's funded. I'm not sure entirely if it would meet that piece of the definition, and I think that the case- That's because you're saying it's not a business. I mean, it's certainly engaged in the renting videos and things like that, but if it were a department store, then it's engaged in the business, so it's the profit issue? Exactly. I think whether that business piece of it is met is questionable for a library, far less questionable for a department store. And beyond question, I think for something like a blockbuster, a brick and mortar store that rents VHS movies, but also, as you said just a moment ago, also sells candy and popcorn and keychains and all sorts of stuff. So if a library isn't covered because it's not in the business of renting movies or delivering movies, doesn't that imply that consumers should then harken back to what that relevant transaction is, which is the business of renting movies or delivering audiovisual materials? Well, not quite, because think about the way Congress defined consumer in section A1, and it defined consumer as, quote, any renter, purchaser, or subscriber of goods or services from a videotaped service provider, unquote. It used that same word, any, in the liability clause too. When describing the kind of person protected by the statute, the liability clause says, quote, any consumer of such provider, unquote. So we have two textual to anys that show us that as to the term consumer, Congress was casting a wide net. But think about going into that blockbuster and buying a Butterfinger candy bar. Say Marty McFly does that. Is he a consumer? We've established blockbuster as a VTSP. I don't think there's any dispute about that. The only question is whether the Butterfinger is a good or service. But it's movable, tangible, consumable property. It's clearly a good. So we have someone who has purchased a good from a videotaped service provider. By the statute's clear, unambiguous terms, Marty McFly is a consumer. But remember, the liability clause- But he's a consumer of a Butterfinger. I mean, he's not necessarily a consumer of videotapes or whatever it is. So I don't understand. It doesn't make a lot of sense to me that there wouldn't be a link between what you're consuming and the videotaped service provider, the audiovisual material service. There is a link, but that link doesn't appear in A1's definition of consumer. It appears in A3's definition of personally identifiable information. And that's where we're going next. So according to the statute, PII includes information that, quote, identifies a person as having requested or obtained specific video materials or services from a videotaped service provider, unquote. And even a request is protected. So think again about that. But your argument is that Blockbuster can, at least according to this act, can disclose that you bought a Butterfinger, but it can't disclose which videos you decided to rent. And that's the part of the statute, not consumer, but that's the definition of personally identifiable information is where it narrows. That's exactly right. Doesn't that set us up for some really anomalous results? I mean, would you say in this case for 247sports.com, if an individual hasn't subscribed to the newsletter, but just like types in 247sports.com and like watches a video, uses the content, are they a consumer? If they don't have any something from the VTSP, then no, they're not a consumer. Okay. So if I just go to it and access materials without being a subscriber, then it's fine for Paramount to send all that information on to whatever advertisers. But if I happen to also get a newsletter from them, then all of a sudden they can't do it for me. Is that what your argument is? I think that's basically correct. And that's the way Congress drafted the statute. Take another example that's even further away from going on a website. What if I bought a sweatshirt from Paramount? I don't know if they make sweatshirts, just go with me here. What if I bought a sweatshirt from Paramount? That means that Paramount cannot disclose anything that I'm streaming on Paramount Plus. But if I hadn't purchased that sweatshirt, it would be totally fine? Again, if there's no link between you and Paramount other than that, aside from what you're streaming, but I guess to be streaming something on Paramount Plus, you have to subscribe to it. Okay. Well, assume like 24 seven sports.com that you can just go in and stream some things without a subscription. Right. I think that's probably right. And again, the reason is the world that Congress was operating in, I think it anticipated reasonably that the primary way for a VTSP to obtain your personal information was to have some kind of consumer relationship with you to sell you something or rent you something that gave them access to some piece of your personal information that it could later pair with again, requests or your obtaining of specific video materials and disclose. And again, it's not even that Paramount could freely disclose that or could not freely disclose it. If you were a subscriber, there are also, you know, informed consent issues that would, that would, uh, So they get more information from me. Like if I've, if I bought the sweatshirt or if I've subscribed to the newsletter, they, they have more, the idea is they have more information from me than if I'm just like browsing around on the site. Certainly if I'm browsing around on the site, they, what, they have my IP address or something like that, but that might be true. Right. But if I've subscribed, then they have my email or something else that they can sell or disclose. Exactly. Or your name or your address or potentially several other pieces of information. Um, and so let's, let's look about what, what's going, let's look at what's going on here. Um, and what the district court did below it assumed Paramount is a VTSP, right? So it assumed it's just like Blockbuster. It also found that Mr. Salazar subscribed to Paramount's newsletter. From there, the question should have been whether that newsletter is enough like a Butterfinger candy bar, a good or service from a VTSP under section a one's definition of consumer, but it sidestepped that question. And when assessing whether Mr. Salazar was a consumer, it considered instead, whether the newsletter was like a VHS copy of back to the future, a specific video material or service under section a three's definition of personally identifiable information. And if you look at footnote 23, the court left, no doubt it expressly held a person can be a quote, subscriber of goods or services of some kind from a videotape service provider, unquote, and still not be a statutory consumer. The district court required something more. The individual had to subscribe to quote goods or services in the nature of audio video content, unquote. That's certainly not what Congress said when it defined consumer, but the district court asked consumer to do the statutory work of PII. That's what we were discussing earlier, linking individuals to specific video materials. And there are two points I hope to make here. We've been focused on the fact that a one and a three concerned different subject matter or content goods or services versus specific video materials or services. And they discuss them in grammatically aligned ways, both of them concluding with from a videotape service provider. But the two sections also feature different language about the relationship an individual must have to those materials for a one, the person has to rent, purchase or subscribe to them. And for a three Congress required only that the person request or obtain them. So a one uses three narrow words to specificity how the individual gets material and then use broad nouns to describe what the material has to be goods or services. So we go narrow relationship to broad content. A three does the exact opposite. It uses broad verbs request or obtain and narrow nouns, specific video materials or services. So for PII we're looking for a broad relationship to narrow content. And that fact confirms Congress was using these terms intentionally. It wasn't an accident. The district court did a third thing. It paired the narrow terms from a one with the narrow material from a three. And that recombination isn't, it doesn't appear anywhere in the statute. For those reasons, your honors, we ask you to reverse the order dismissing the complaint. Thank you. Okay, thank you. You'll have your rebuttal time. We'll hear from counsel for the other side. May it please the court, David Yohai for Paramount Global 247 sports. Your honors to resolve this appeal, the court needs to consider the text, history and purpose of the statute, but then needs to use its common sense. The question is whether the federal statute, the Video Privacy Protection Act applies when somebody just signs up for a newsletter. The answer is clearly no, because the newsletter is a written offering with articles and links. It's not a video offering. Do you think if the newsletter, so there have been a couple of cases that have come out different ways on phone apps. And I take it that a phone app, the video is perhaps delivered on the app itself. The email has, I take it has links. If there were videos that were embedded in the email, would that be different? Would that make it a different case? I think it would make it a different case. And the other thing I want to point out here is what's embedded in this email, this newsletter, are actually articles. You can see that in the record at 17-1. For example, the title of these articles, Georgia coach Kirby Smart turns attention towards SEC championship game against LSU. I don't know what a video of somebody turning their attention to a championship game even looks like. That's what the confusion is here. These are links to articles. To get the video, you have to go back to the website. The links go back to the website and counsel to the appellant points out that on the website there are videos, but just clinking these links doesn't actually get you any video. Can I just clarify, are you contesting that 24-7 sports.com is a video tape service provider? Paramount Global clearly supplies video. 24-7 sports on its website has video and has articles. We actually did contest below that 24-7 sports in itself was a video tape service provider because we don't think it's in the business, frankly, of supplying video. It's in the business of supplying news, in the business of supplying articles with some video. The court did not rule on that ground. The court ruled on the consumer ground, which I think all roads lead back to. The court found... But for the purposes of appeal, are you taking the district court's assumption that 24-7 sports.com is a video tape service provider or are you still contesting that? I think, well, we still contest it, but for the appeal it doesn't matter because our position on appeal is regardless of whether all of Paramount Global is a video tape service provider, here there's no link between what was purchased and the video. I'm having a little bit of difficulty because the statute says from a video tape service provider, right? And it has goods and services, which I think we all agree is a broad term, and it just says from. And you want the court to read in a qualifier, like a qualifier, like specific video materials, but that qualifier is in A3 and it's not in A1. So why? I mean, why? I mean, these are goods and services from, and you're admitting at least for the purpose of here that they're a video tape service provider. Your Honor, it doesn't say any goods or services. It just says goods and services. It could have said any, but it doesn't. It also could have said, like it says in A3, specific video materials or similar materials or things like that. But it doesn't say that either. We got to go with what Congress actually said. Here they said goods and services. Agreed. But if you look at A3, it also says services from a video tape service provider. Well, it says specific video materials or services. Specific video can modify materials or services. It could, but as one of the district court's in California, it wouldn't make sense to say services or other services, not video services there, given that phrasing as well. And frankly, if you look at all of the headings of the statute, in addition, videotape rental and sale, wrongful disclosure of videotape rental and sale, or sale records, every single one of these uses the phrasing rental or sale of a videotape or equivalent or material. Where counsel wants to go is to construe goods or services to mean anything produced by today's economy. Everything is a good or a service. He wants to construe the statute that broadly. And frankly, that does not make any sense in the context of today's world. Remember, this was done back, yes, in 88 with the videotape rental store. It may have made sense there where it was clear. But today, where we do have all these different kinds of offerings, the department store example is much closer to where we are here. And your sweater example is more place closer to where we are here. If you just buy a sweater or a pair of shoes with no link to the video, do we really want to create actionability under this statute? That's the problem here. And that's what was happening. We had hundreds of cases being filed based upon either a subscription or some kind of purchase of things having nothing to do with video. And then people separately went to the website and watched video no different than anybody who casually visited the website and watched video. And these cases were being brought based upon, on the one hand, a person who bought nothing that relates to video and a separate interaction with the website where they watched video. Can I ask you about the history? Yes. The act was amended in 2013 when we did have streaming, when we did have the internet. Indeed, the amendment is very upfront about that. And my understanding, please correct me if I'm wrong, is that they made it so you could electronically consent to this information being disclosed, which quite frankly, I imagine I'm clicking on that all the time unknowingly. But how do you the 2013 amendment cutting? I mean, some of the argument here is, well, in 1988, we couldn't have been thinking about this. But indeed, Congress revisited it in 2013. What are we to make of that? Well, I think you need a specific and separate consent. But I think the point of that is a specific and separate consent if it relates to disclosures concerning video. Remember, the library portion of the statute was struck out in the earlier draft to answer Judge Nalbany's question, perhaps indirectly, the library portion was struck out. So Congress was not concerned with these written materials, or at least the compromise was we're going to take that out because that swept too broadly. So you have the combination of written materials being struck out, and then a very specific consent requirement, again, targeted around video materials. Nobody, I think, was saying that you needed to consent to buy a sweater, or to buy a pair of shoes, or in this case, to subscribe to the newsletter. Council also suggested that the issue here was you gave your email and then that email is somehow... Well, the statute doesn't prevent the disclosure of your sweater purchase or your Butterfinger purchase. It only, because personally identifiable information is limited to the video type materials. So you say, maybe nobody was thinking of that, but that's not covered by the statute anyway. I'm kind of asking, maybe I phrased it wrong, but if Congress is revisiting this in 2013, very well knowing about streaming, it says it in all the 2013 material. It is saying that video is, quote, now obsolete, and that the internet has revolutionized this. If they're leaving still the rest of this intact, what do we make of this? Again, I think what we make of it is that Congress was focused on actually video or a similar audio video service. So it wasn't thinking too hard about these- Well, how could it have been focused on that if it said that was obsolete and it's now saying you can do electronic signatures or electronic consent? Clearly, it is focused on... I mean, it mentioned so-called on-demand cable services and internet streaming services allow consumers to watch movies or TV shows on television, laptop computers, and cell phones. Like, it's clearly thinking about this. But that's, again, but that's the focus. Everything that you just listed was video or some form of video cable or video. What it wasn't focused on was buying some separate piece of, you know, some separate thing, shoes, a newsletter, or something else, and somehow that triggering liability under the statute. And the point that I wanted to make, which is related, is that counsel suggested that the email that you give in connection with the newsletter is somehow being transmitted to Facebook through the metal pixel. That's not the case at all. Nothing about that transaction has anything to do with what's passed. What's passed is if you go to the video, the website, your IP address, perhaps, and other things could be passed at that point, but it has no link to your subscribing to the newsletter. That's not even alleged. In fact, in his complaint, Salazar doesn't even allege that he watched any video through a link in the newsletter or went to the website as a result of any video in the newsletter. It's two separate interactions. He subscribes to the newsletter, and then on the video side, he goes to the website. Why? Because in the complaint, it's actually not even Salazar's Facebook address. It's an attorney at the law firm who did this. So you have a subscription, and then the attorney at the law firm puts in their video information going to the website. So that's the disconnect here. That's one of the disconnects here. So the problem that you have is you are opening up all of these interactions in a situation where you really want something much more limited to video because then it's accountable. Okay, this person subscribed to the video site and watched a video, and this was disclosed. That's the consumer we should be concerned with, not the consumer of any product writ large. And that's the problem. And that's, by the way, it's not just this district court. Twenty district courts have adopted this approach. None have adopted his approach. Three that he points out. One actually dismissed the case, and the other two, there was an account on the website, not just the newsletter. There was actually an account on the website that was established. So you've got 20 judges looking at this, and they all come out the same way, that the newsletter is a step too far. Let me ask you that then. Do you think, if I had an account on a website, would that be enough, or would the account have to get me access that somebody else wouldn't have? I think clearly in the case that if you had access to something else, somebody wouldn't have some video, that would be enough. I think it's an open question about whether the account itself would be enough, but that's not our case here. The account plus video one is not our case here. That's been a closer question. Courts have divided on that question, but on the issue of just the newsletter, really nobody has held that just the newsletter is sufficient. It's been on other grounds or not much analysis, but it's just one step too removed. That's the problem when you look at the statute. Also, on the word subscriber, appellant says that you should not give the word subscriber its ordinary meaning in its brief. That I submit is sort of the synchronon of why this appeal fails. Why would we not give the word subscriber its ordinary meaning, meaning a subscriber here? Do you dispute that the plaintiff here is a subscriber to the newsletter? The plaintiff is a subscriber just to the newsletter. Yeah, but we don't have to otherwise. Sorry, thanks for answering that. No, no, that's fine. Just to the newsletter, but not to video services or videotape. So, you have that. Then, look, last counsel did not bring this up, but in anticipation of, really he's arguing that he should be allowed to amend his complaint at some point to add to the allegations here. This circuit has been pretty stingy about that kind of request where it comes after everything is briefed after a decision. Counsel? Counsel, yes. I was finishing my sentence, where they have not made a motion to amend or raise the amendment before the decision. Here, you just had it in a footnote. They could have made a motion to amend, request to amend either during the briefing or even after, but they didn't do either one. All they had was a footnote, so there's no reason to amend. They couldn't amend anyway because the facts are clear that all that you have in the newsletter are links to articles, and on the website, you have videos. Can I ask you a couple questions? Number one, there was an issue about standing at one point. I take it you're not pressing that argument? We're not pressing the argument. We do think there were concerns raised about whether there's any concrete injury here. The way the case law has developed, the courts have said, well, there's an intrusion upon seclusion, and perhaps that's enough. There's no real reason to debate that, at least from our perspective. We understand why the court might be interested in it, but post-transunion, even though we did think we had arguments based upon transunion, the case law that's come down has said, well, intrusion upon seclusion provides some kind of injury. We don't necessarily agree with that, but that's where we are. Okay, and then there was a similar case in the Second Circuit, I believe. That case has been argued, is that right? Correct. But not decided yet? They have not decided. The NBA appeal was argued. There was a lot of discussion about whether the plaintiff should be allowed to amend in that case. That presented slightly different questions. NBA had, I would say, a little bit more of a video hook in their newsletter as well. Ours is purely articles, where in their case, there was a debate about whether there were links to video. NBA obviously lends itself a little bit more to video, but I think that appeal has not been resolved, so we don't know how the court's going to come out in that case. Okay, thank you. Can I ask you one question about, you said that you didn't think the plaintiff had alleged that he'd even watched any videos on 247sports.com. Is there a sufficient allegation that material, personal identifiable material, has been transferred via the pixel or otherwise? It's this phrase, video media, that's one of the things in the complaint that he says, which is this very convoluted definition of computer data. It's not totally clear what means by that. This is the debate about, he claims the district court was plainly erroneous. It's frankly very confusing what he alleged in that respect, but there clearly was not any allegation that he watched any video by a link from the newsletter or any video in the newsletter. Thank you. Thank you. Okay, thank you, counsel. Rapato? Thank you, your honor. Just really quickly, let me start with that last point. We do specifically allege that we used the subscription, Mr. Salazar used his subscription to watch video media on 247sports.com. And there was a note about the example in the complaint involving a lawyer and not Mr. Salazar specifically. But the example that we gave doesn't have to prove our allegations for those allegations to be accepted as true. Where is that allegation? What allegation are you specifically referencing? Regarding watching the videos? Yes, using the email subscription or the newsletter. Bear with me for just a moment, your honor, and I'll find it in the complaint. It's paragraph 12. During the relevant time period, he has used his 247sports.com digital subscription to view video media through 247sports.com and or the app while logged on to his Facebook account. So paragraph 12 says that. I want to just touch really quickly on the note about the subscriber not getting its ordinary meaning. And our point is a little bit different than how it was represented. Our point is there's no reason to give goods or services a really idiosyncratic meaning that is not the way you would define goods or services in any other context, but then insist that subscriber has to take its ordinary meaning and not in the idiosyncratic one. Basically, by applying that idiosyncratic definition or meaning to goods or services, you're creating an ambiguity with subscriber. I do want to go back to the example, whether it's a sweater or a Butterfinger candy bar, whether it's from Blockbuster or a department store. The critical point is that the VTSP doesn't have to provide exclusively video content. Congress anticipated that it would provide other stuff too. So think about Sears and buying a sweater from Sears. That makes you a consumer. But as we've said several times now, it doesn't create personally identifiable information. That's where the statute gets narrow. That's where Congress required the link between the individual and the video materials. And when you look at, again, the statute requires a different relationship to the materials in A3 than it in A1. For A3, just a request, a freestanding request is protected. So going into Sears with your sweater and asking, hey, do you have a copy of Back to the Future? That creates personally identifiable information. Now, Sears has information about you, a consumer, by virtue of your sweater purchase that links you to that video material, Back to the Future. And they're a VTSP because they rent or sell video material. But if you didn't buy the sweater and you just asked, do you have Back to the Future? Then Sears could disclose that. In theory, but it's hard to imagine. And I think this is why Congress structured it this way. It's hard to imagine how that individual would have personally identifiable information. Yeah, they wouldn't have collected it. So can I ask you, I mean, if I take your textual argument that from a videotape service provider means goods and services, any type of goods and services, just generally the broad language, from a videotape service provider, and then we get these kind of anomalous results where maybe if you bought the sweatshirt or something like that, all of a sudden now all your browsing can't be disclosed. But if you didn't buy something else, it can be like, don't we construe text sometimes? I mean, I know we're going to adhere to the text and not always think about the consequences and Congress voted on this. But don't sometimes we construe things to avoid these kinds of anomalous results? I think it's fair to say that sometimes a statute should be construed to avoid an anomalous result. But I think you need an ambiguity. And there is no ambiguity here. There's no ambiguity in a one's definition of consumer, which is different from its discussion and definition of personally identifiable information from a three in critical ways. As I laid out, there's no ambiguity to kind of read something into or out of the statute that makes a different result appear. And the problem too, is I think there are going to be some anomalies no matter how you read it, because the problem again, and I think it's a far worse result, is reading it my colleague's way means requests can't be protected. There's no way to protect that request because a request can never be a purchase or a subscription or a rental. So that consumer in language that Congress clearly laid out, hoping to protect the request, now it's out of the statute altogether. And if you have to purchase or subscribe to the video itself, we might as well read service out of the statute altogether. So you're reading out all of these terms and you're importing a different term into A1 basically on the premise that you can't have a consumer unless you also have PII. But in that event, why did Congress provide separate definitions for them? Why did it require three elements and not two? So I think there are a lot of anomalies with that kind of approach to the interpretation as well. Once again, your honors, we ask that you reverse the order dismissing the complaint. Thank you very much. Thank you, counsel. Thank you both for your arguments and your briefs. The case will be submitted. Thank you. Thank you.